[Crim. No. 12778. First Dist., Div. One. Nov. 7, 1974.]

THE PEOPLE, Plaintiff and Appellant, v.
JOHN RAY PAUL FAVALORA, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

## OPINION

**BRAY, J.*—**Plaintiff People of the State of California appeals from an order of the Monterey County Superior Court dismissing the information charging defendant with violation of Penal Code section 12020 (possession of a sawed-off shotgun).

### QUESTION PRESENTED

Is possession of an inoperable sawed-off shotgun a violation of Penal Code section 12020?

### RECORD

An information was filed in the Monterey County Superior Court charging defendant with violation of Penal Code section 12020 (possession of a sawed-off shotgun). Pleading not guilty defendant moved, pursuant to Penal Code section 1538.5 to suppress evidence and pursuant to Penal Code section 995 to dismiss the information. At a hearing of the motions the court granted the section 995 motion and dismissed the information.

. Section 12020 of the Penal Code provides in pertinent part: "Any person in this state who . . . possesses any instrument or weapon of the kind commonly known as a . . . sawed-off shotgun . . . is guilty of a felony, . . . As used in this section a 'sawed-off shotgun' means a shotgun having a barrel or barrels of less than 18 inches in length or a rifle having a barrel or barrels of less than 16 inches in length, or any weapon made from a rifle or shotgun (whether by alteration, modification, or otherwise) if such weapon as modified has an overall length of less than 26 inches."

Deputy Sheriffs Duval and Keene were patrolling Highway 1 in Monterey County at approximately 11 p.m. They observed an automobile stopped on the shoulder of the road, two men standing by its side. The men possessed a flashlight and were donning gloves. One of the men wore extremely dark clothing including an overcoat. Burglaries had been experienced in the area in the past. Directing their spotlight toward the car, one of the deputies noticed one of the men make a quick movement, as though throwing something to the ground. Parking their car the deputies approached the men. Defendant was wearing a black raincoat and gloves and had a woman's stocking over his hair. He was carrying a flashlight. On the ground near the right front tire was a bolt action .22 caliber rifle.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

It had no bolt or firing pin. Its barrel was less than 16 inches long. At the sheriff's substation, after being advised of his rights, defendant said that he had taken the weapon from the car and thrown it on the ground. He said the rifle was in the car because he was looking for a bolt for it.

Later a deputy sheriff procured a bolt from a sporting goods store and placed it in the rifle. It then fired a .22 caliber cartridge properly.

At the preliminary examination the magistrate found that the weapon was a sawed-off shotgun within the meaning of Penal Code section 12020 because a bolt could have been inserted in a few seconds and the weapon was less than 26 inches long. He also found that the circumstances led to a conclusion that the weapon probably was operable shortly before the deputies seized it. He held defendant to answer to violation of section 12020 and attempted violation of that section. At the 995 hearing the court held that in order for a sawed-off shotgun to come within the prohibition of section 12020 it must be operable and granted defendant's motion for dismissal of the information.

Possession of the sawed-off rifle is prohibited by Penal Code section 12020.

Inoperability is not the test. The rifle found in defendant's possession is a "sawed-off shotgun" under the definition provided in section 12020. It is "a rifle having a barrel . . . of less than 16 inches in length" and "has an overall length of less than 26 inches." ▮▮▮ There is nothing in the section which requires that the gun be operable. Had the Legislature intended that it must be so it could readily have so provided. Moreover, the section distinguishes between a "weapon" and an "instrument." If it is not a "weapon" because inoperable, it is an "instrument" of "the kind commonly known" as a sawed-off shotgun.

Prior to 1961 sawed-off shotguns were not in the list of instruments or weapons proscribed by section 12020. In that year the section was amended (Stats. 1961, ch. 996, p. 2645) to include them and their description. However, a sawed-off rifle was not included in the description. In 1965 (Stats. 1965, ch. 36, § 2, p. 915) the statute was amended to include a sawed-off rifle in the description. It is signifcant that the Legislature in providing these amendments set forth no requirement of operability.

▮▮▮ It is not the use of sawed-off shotguns that is prohibited by the statute, it is their possession, as pointed out in 1933 in *People v. Ferguson,* 129 Cal.App. 300, 304 [18 P.2d 741], where the defendant was convicted of possession of "metal knuckles" in spite of his contention that he was keeping them as "heirlooms."

That sawed-off shotguns are anathema to the Legislature is shown by the number of sections of the Penal Code making them contraband. Section 12001.5 provides that nothing in the code authorizes the manufacture, importation into the state, keeping or offering for sale or giving, lending or possession of a sawed-off shotgun. Section 12020 has already been described. Section 12029 makes possession of a sawed-off shotgun a nuisance, subject to confiscation and destruction.

■ There are certain articles which are impressed by the law as "*indicia* of criminal purpose." (*People* v. *Ferguson* (1933) 129 Cal.App. 300, 304 [18 P.2d 741].) Referred to were slungshots, sandbags, blackjacks and metal knuckles, which "To every person of ordinary intelligence . . . are known to be the tools of the brawl fighter and cowardly assassin and of no beneficial use whatever to a good citizen or to society. The Legislature may take note and act upon such common facts [citation]. . . . It follows that if the beneficial use of a thing is entirely lacking or grossly disproportionate to its harmful use the police power may absolutely prohibit its possession [citation]." (*People* v. *Ferguson, supra,* p. 304.) The prohibited articles mentioned in the above citation are some of those proscribed in section 12020, to which others including sawed-off shotguns have been added. Certainly a sawed-off shotgun is an "*indicia* of criminal purpose" as it has no other use and causes great terror to the citizen who is confronted by it in the hands of a robber, burglar or other lawbreaker, whether it is operable or not.

In *People* v. *Mulherin* (1934) 140 Cal.App. 212, 215 [35 P.2d 174], a prosecution for possession of a "blackjack" the court stated, "It is significant that the legislature did not prohibit possession of a black-jack as such, a slung-shot, as such, a billy, as such, or of a sand-club, a sand-bag or even metal knuckles, as it might have done, but instead, and very likely with appreciation of the difficulties of nomenclature, forbade ownership of any instrument or weapon 'of the kind,' as commonly known. The purpose undoubtedly was to outlaw instruments which are ordinarily used 'for criminal and improper purposes. . . .' " Thus, the statute as now constituted does not prohibit the possession of a sawed-off shotgun as such, but any instrument or weapon of the sawed-off shotgun "kind." An inoperable shotgun is of that kind, and whether operable or inoperable is of a kind ordinarily used for criminal and improper uses. A victim of a robbery, burglary, assault or rape is equally frightened and subdued by being threatened by an inoperable sawed-off shotgun as an operable one. It is doubtful if anyone confronted by a sawed-off shotgun would dare question its possessor about its operability.

■ Clearly the legislative intent is to prohibit possession of objects whose likely criminal use appears from the character of the weapon alone. (See *People* v. *Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100] where the court said, "The Legislature obviously sought to condemn weapons common to the criminal's arsenal.") As said in *People* v. *Satchell* (1971) 6 Cal.3d 28, 41, 42 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383]: "This purpose [that is, to outlaw possession of the criminal's arsenal] proceeds from the recognition that persons who possess the specialized instruments of violence listed in the section are ordinarily persons who intend to use them in violent and dangerous enterprises. Thus, rather than simply proscribing the *use* of such instruments, the Legislature has sought to prevent such use by proscribing their mere *possession*. In order to insure the intended prophylactic effect, the intent or propensity for violence has been rendered irrelevant."

Defendant's reliance on *People* v. *Jackson* (1968) 266 Cal.App.2d 341 [72 Cal.Rptr. 162] is misplaced. There the offense charged was violation of section 12021 not section 12020. Section 12021 prohibits possession of a concealable firearm by among others, a former felon. The defendant had in his possession a pistol which was inoperable because it lacked a firing pin. The court held that a pistol which was incapable of being fired because it lacked a firing pin if no replacement part was in the possession of the possessor of the pistol, was not a pistol within section 12021.

■ The main distinction between sections 12020 and 12021 is that the former prohibits possession of an instrument or weapon "of the kind" of the prohibited articles, while for there to be a violation of 12021 there must be in possession the prohibited article itself. Apparently the Legislature intended in section 12021 to prohibit possession of guns which will shoot, not as in section 12020 objects which look like guns. (See *People* v. *DeFalco* (1959) 176 Cal.App.2d 590, 593 [1 Cal.Rptr. 578].)

In *People* v. *Guyette* (1964) 231 Cal.App.2d 460 [41 Cal.Rptr. 875] the defendant was held to be properly convicted of a violation of section 12020 where he was in possession of a sawed-off shotgun kept in a suitcase but broken down into three component parts. The court stated at page 467, "The chief use for a sawed-off shotgun today is to rob a bank or commit a similar crime, and that is the reason that possession of such a weapon is forbidden by the Penal Code. The evidence indicated that the gun could be assembled and used in a matter of seconds." And quoting from *People* v. *Williams* (1929) 100 Cal.App. 149, 151 [279 P. 1040], "The rule is well settled that a deadly weapon does not cease to be such by becoming temporarily inefficient, nor is its essential character changed by dismemberment

if the parts may be easily assembled so as to be effective [citations]." Placing a bolt in a rifle can easily be done. Also, it is a simple and rapid procedure to remove and dispose of the bolt.

It is interesting to note that at the time of the *Jackson* decision section 12001 read in pertinent part: " 'Pistol,' 'revolver' and 'firearm capable of being concealed upon the person,' as used in this chapter shall apply to and include any device, designed to be used as a weapon, from which is expelled a projectile by the force of any explosion, or other form of combustion, and which has a barrel less than 12 inches in length." (Stats. 1967, ch. 1361, § 1, p. 3201.) In 1969 this section was amended by the addition of a second sentence, " 'Pistol,' 'revolver' and 'firearm capable of being concealed upon the person' as used in Sections 12021, 12072 and 12073 *include the frame or receiver of any such weapon."* (Stats. 1969, ch. 1002, § 1, p. 1973.) (Italics added.) The legislative action essentially nullified the effect of *Jackson* by codifying an intent contrary to that decision.

In *People* v. *Satchell, supra,* page 42, the court said that the propensity for violence of the possessor of the objects proscribed in 12020 is irrelevant, so in the instant case, it is irrelevant that the shotgun's propensity for violence is curbed because of the missing bolt. Its propensity for use for criminal purposes in that it can be used for threatening victims of intended crimes is still very great.

In *People* v. *Hayden* (1973) 30 Cal.App.3d 446 [106 Cal.Rptr. 348] one of the issues was whether a finding that the defendant used a deadly weapon under the provisions of section 12022.5 could be sustained where the defendant committed robberies by threatening with and pointing a revolver at his victims which revolver was never recovered, the defendant contending that the People had not sustained the burden of demonstrating that the weapon was operable. The court said at page 452, "There is no implication in section 12022.5 which requires the prosecution, as part of its burden of proof, to establish the weapon's operability. . . . [T]he statute seeks to deter both physical harm and *conduct which produces fear of harm.* The fear may arise either from a gun that really shoots or from *one which is designed to shoot and gives the appearance of shooting capability.* Persons held at gunpoint have no stomach for inquiry. Danger radiates not only from the weapon, but from the defensive reaction of others. In response to the lawbreaker's weapon, operable or not, a victim or law officer may himself resort to a firearm. . . . In view of the discerning objective of section 12022.5, it is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability." (Italics added.) While the court in *Hayden* was dealing with a violation of

section 12022.5 (use of firearm in commission of robbery, assault with deadly weapon, etc.) its language concerning the effect of even a nonoperable weapon applies equally to a violation of section 12020 in that it is necessary to prohibit the possession of such weapon so that it may not be used in committing crimes. The latter statute seeks to prohibit the possession of any instrument or weapon of the kind named which will produce either physical harm or fear of harm.

As pointed out by the Attorney General, a sawed-off shotgun is common to the criminal's arsenal. It is easily concealable upon the person and easy to manufacture from standard, nonconcealable shotguns and rifles normally used for hunting and similar noncriminal purposes. The fear engendered in the victim and the possibility of danger to the possessor are as great where the weapon reasonably appears to be operable whether it actually is operable or loaded. The Legislature did not provide that these instruments were prohibited only when loaded or only where they were capable of propelling a projectile, or even only when it is established that they were to be used for criminal purposes. (*People* v. *Stinson* (1970) 8 Cal.App.3d 479, 501 [87 Cal.Rptr. 537].) " 'Sawed-off' shotguns and rifles are suitable for unlawful purposes because of their concealability and ease of handling." (*Stinson, supra,* p. 500.) In that case the bolt was missing from the weapon, but was in the defendant's pocket. The fact that the weapon was not operable did not deter the court from finding that section 12020 was violated. A sawed-off shotgun has no legitimate purpose whether with or without a firing pin. It is contraband and its possession is illegal per se.

Order reversed.

Molinari, P. J., and Elkington, J., concurred.