210 Cal.App.3d 77 (1989)
258 Cal. Rptr. 290
THE PEOPLE, Plaintiff and Respondent,
v.
ANTONIO MARROQUIN, Defendant and Appellant.
Docket No. B039831.
Court of Appeals of California, Second District, Division Three.
May 4, 1989.
*78 COUNSEL
Saul M. Ferster for Defendant and Appellant.
James K. Hahn, City Attorney, William N. Sterling and Cindy B. Clemens, Deputy City Attorneys, for Plaintiff and Respondent.
OPINION
ARABIAN, J.

INTRODUCTION
Defendant Antonio Marroquin appealed his conviction in the municipal court for violation of Penal Code section 12025, subdivision (b),[1] carrying a concealed weapon. The appellate department of the superior court reversed, construing the statute to require proof of the weapon's operability, and certified the case for publication. At the request of the Los Angeles City Attorney, we ordered the matter transferred for hearing and decision pursuant to rule 62 (a), of the California Rules of Court to secure uniformity of decision and to settle an important question of law.
*79 (1a) We find that Penal Code[2] section 12025, subdivision (b), does not require proof of operability and affirm the judgment.

FACTUAL AND PROCEDURAL STATEMENT
Defendant was charged with brandishing (§ 417) and carrying a concealed weapon on his person. (§ 12025, subd. (b).) The charges arose from an incident in which he pointed a gun at several individuals in front of an apartment building he managed. Although defendant fired no shots, the victims were frightened and perceived sufficient danger to summon the police. At trial, testimony revealed that the weapon, a .22 caliber semiautomatic handgun, was missing a magazine without which it could not fire. Also, a spring inside the magazine was not working properly, thus preventing bullets from advancing even had the magazine been inserted.
In response to an objection by the prosecutor, the court held a hearing outside the presence of the jury to resolve the question of operability and its relevance to the charge. The court determined that operability was not an element of the offense, precluded defendant from presenting any further evidence on the question, and did not instruct on this point as a defense.
The jury convicted on both counts. Defendant appealed, contending the court's ruling was inconsistent with the holding in People v. Claseman (1986) 183 Cal. App.3d Supp. 1 [229 Cal. Rptr. 453], which construed section 12025, subdivision (a), carrying a concealed weapon in an automobile, to require proof of operability. Agreeing, the appellate department reversed the conviction, finding implied in the statutory scheme an intent to deny the defense of inoperability only to certain categories of offenders, ex-felons and drug addicts. (See id., at p. Supp. 3.)

DISCUSSION
(2) "In construing a statute `we begin with the fundamental rule that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law."'" (California Teachers Assn. v. San Diego Community College Dist. (1981) 28 Cal.3d 692, 698 [170 Cal. Rptr. 817, 621 P.2d 856].) "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, ... the sole function of the courts is to enforce it according to its terms. [Citations.]" (Caminetti v. United States (1917) 242 U.S. 470, 485 [61 L.Ed. 442, 452-453, 37 S.Ct. 192].) Section 12025, subdivision (b), however, is silent as to the element of operability. We, therefore, must examine other evidence of legislative intent to glean the statute's underlying purpose and to determine *80 the construction that best implements it. (See, e.g., Palmer v. Agee (1978) 87 Cal. App.3d 377, 384 [150 Cal. Rptr. 841].)
(1b) Section 12025, subdivision (b), is part of The Dangerous Weapons' Control Law (§ 12000 et seq.), promulgated to control in manifold ways the possession and use of firearms and other dangerous weapons. In general, the statutory scheme details the persons who may have a weapon (e.g., § 12021 [prohibiting possession by ex-felon]), the restrictions on possession (e.g., § 12031 [prohibiting possession of loaded weapon except under enumerated circumstances]), and the additional consequences for use in facilitating criminal activity. (E.g., § 12022.5 [enhancement for use of firearm during commission of felony].)
The statutes make no express reference to operability. Section 12001, subdivision (a), contains the following general definition: "As used in this chapter, the terms `pistol,' `revolver,' and `firearm capable of being concealed upon the person' shall apply to and include any device, designed to be used as a weapon, from which is expelled a projectile by force of any explosion, or other form of combustion, and which has a barrel less than 16 inches in length...." Section 12001, subdivision (b), further states: "As used in Sections 12021, 12021.1, 12070, 12072, and 12073 of this code, and Sections 8100 and 8103 of the Welfare and Institutions Code, the terms `pistol,' `revolver,' and `firearm capable of being concealed upon the person' include the frame or receiver of any such weapon." Applying the principle of expressio unius est exclusio alterius, the appellate department ignored subdivision (a) and interpreted subdivision (b) as expressing an intent to withhold the defense of inoperability only from certain "persons who ought not to have firearms." (People v. Claseman, supra, 183 Cal. App.3d at p. Supp. 3.) We find this conclusion unduly restrictive in effectuating the purpose of the statute in light of its legislative history as well as inconsistent with all other decisional authority construing related code provisions.
In People v. Jackson (1968) 266 Cal. App.2d 341 [72 Cal. Rptr. 162], the court held that a violation of section 12021 required proof that the weapon was capable of being fired. (Id., at pp. 348-349.) In 1969, the Legislature effectively nullified this holding by amending section 12001, subdivision (b), as quoted above. (See People v. Thompson (1977) 72 Cal. App.3d 1, 4-5 [139 Cal. Rptr. 800].) Notably, subsequent to this change, "no court [except the appellate department in People v. Claseman, supra,] has held operability of a firearm to be an element of The Dangerous Weapons' Control Law. Thus Penal Code section 12022, subdivision (a) (enhancing a sentence when a felony is committed while armed), (People v. Nelums (1982) 31 Cal.3d 355 [ ]), Penal Code section 12020 (possession of a sawed-off shotgun), (People v. Favalora (1974) 42 Cal. App.3d 988, 991 [ ]), Penal Code section 12021 (possession of a concealable firearm by an ex-felon), (People v. Thompson *81 (1977) 72 Cal. App.3d 1 []), Penal Code section 12022.5 (enhancement for use of a firearm during commission of a felony), (People v. Jackson [(1979)] 92 Cal. App.3d 899), and Penal Code section 4574 (possession of a firearm while confined in jail), (People v. Talkington (1983) 140 Cal. App.3d 557 []) all were held not to require operability of the firearm." (People v. Taylor (1984) 151 Cal. App.3d 432, 437 [199 Cal. Rptr. 6].) In Taylor, the court joined this consensus in its construction of section 12031, subdivision (a), possession of a loaded firearm in a public place. (151 Cal. App.3d at p. 437.)
Several cases disclose an important common thread of perceived fear in their discussion of the underlying purpose of The Dangerous Weapons' Control Law: "[I]t is irrelevant that the shotgun's propensity for violence is curbed because of the missing bolt. Its propensity for use for criminal purposes in that it can be used for threatening victims of intended crimes is still very great." (People v. Favalora (1974) 42 Cal. App.3d 988, 994 [117 Cal. Rptr. 291].) "The fear may arise either from a gun that really shoots or from one which is designed to shoot and gives the appearance of shooting capability." (People v. Hayden (1973) 30 Cal. App.3d 446, 452 [106 Cal. Rptr. 348], disapproved on other grounds in People v. Rist (1976) 16 Cal.3d 211, 222, fn. 10 [127 Cal. Rptr. 457, 545 P.2d 833]; see also People v. Talkington (1983) 140 Cal. App.3d 557, 563 [189 Cal. Rptr. 735].) "The victim is placed in fear and cannot be expected to inquire into the condition of the gun. The danger remains that the reaction by the victim or some third person to the appearance of the gun will cause harm to befall someone." (People v. Jackson (1979) 92 Cal. App.3d 899, 903 [155 Cal. Rptr. 305], fn. omitted.) "One who is armed with a concealed weapon may have the potential to harm or threaten harm to the victim and those who might attempt to interrupt the commission of the crime or effect an arrest. [Citation.]" (People v. Chambers (1972) 7 Cal.3d 666, 672 [102 Cal. Rptr. 776, 498 P.2d 1024].) "Similar and substantial risks of harm by a resisting victim or third person exist whether or not the offender's firearm is operable. Although such risks may be minimal if the firearm remains concealed, armed offenders frequently may passively display their firearms, without actually using them to facilitate the commission of their offenses. Such passive display may stimulate resistance." (People v. Nelums (1982) 31 Cal.3d 355, 359-360 [182 Cal. Rptr. 515, 644 P.2d 201].) "The possession of a firearm under the enumerated circumstances constitutes a threat. If the Legislature had intended otherwise, it was free to require the firearm be operable." (People v. Taylor, supra, 151 Cal. App.3d at p. 437.)
These observations apply equally to carrying a concealed weapon. Significantly, the statute's legislative history focuses on the imminent threat to public safety from easily obtainable, concealable weapons used to perpetrate violent crime and the need to restrict their availability. (See, e.g., Assem. Bill No. 980 (1917 Reg. Sess.); see generally Rep. of the Cal. Crime Com. *82 (1929) pp. 20-23.) As with other provisions of The Dangerous Weapons' Control Law, the substantiality of that threat exists irrespective of operability. Indeed, in this case, the victims were fearful to the point of hysteria at seeing defendant brandish his gun.
Other pertinent observations buttress our conclusion: "It is not the use of sawed-off shotguns that is prohibited by the statute, it is their possession...." (People v. Favalora, supra, 42 Cal. App.3d at p. 991.) "There is no requirement of specific intent [for violation of section 4574], i.e., the prosecution does not have to show the defendant intended to use the object in a violent manner. [Citations.]" (People v. Talkington, supra, 140 Cal. App.3d at p. 561.) In enacting section 12025, the Legislature evinced an intent to proscribe the possession of all concealed or concealable weapons by other than authorized individuals. All exemptions have been explicitly delineated. (See, e.g., §§ 12026, 12027.)

CONCLUSION
The Legislature, despite numerous opportunities to do so, has not authorized inoperability of a weapon as a defense to this or any related section. On the contrary, it continues to focus the scope of the statutory scheme aiming its sights in targeting the unlawful activities of an ever violent society.
In concert, we conclude that a firearm, the generic term used to describe an object which may silence, maim, strike or destroy that which moves, breathes or exists, need not be operable to convict under Penal Code section 12025, subdivision (b). To engraft such a requirement would be inconsistent with the societal effort to curtail criminal conduct.

DISPOSITION
Defendant's judgment of conviction is affirmed.
Danielson, Acting P.J., and Croskey, J., concurred.
NOTES
[1] Penal Code section 12025, subdivision (b), states: "Any person who carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a misdemeanor punishable by imprisonment in the county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or by both such fine and imprisonment, except any person, having been convicted of a crime against the person, property or a narcotics or dangerous drug violation, who carries concealed upon his or her person any pistol, revolver, or other firearm capable of being concealed upon the person without having a license to carry such firearm as provided in this chapter is guilty of a public offense and is punishable by imprisonment in a state prison, or by imprisonment in a county jail not to exceed one year, or by a fine not to exceed one thousand dollars ($1,000), or by both such fine and imprisonment. Any person convicted under this subdivision who has previously been convicted of any felony or of any other crime made punishable by this chapter, is guilty of a felony, and if probation is granted, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that he or she be imprisoned in the county jail for not less than three months."
[2] Unless otherwise indicated, all further statutory references are to the Penal Code.