[No. A067716. First Dist., Div. Four. Feb. 29, 1996.]

In re ARTURO H., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ARTURO H., Defendant and Appellant.

[No. A069652. First Dist., Div. Four. Feb. 29, 1996.]

In re ARTURO H., a Minor, on Habeas Corpus.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II.-V.

**COUNSEL**

Ann Vandepol for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Ronald E. Niver and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HANLON, J.**—Arturo H. appeals from a dispositional order committing him to the California Youth Authority after he was found to have possessed a pellet gun on school grounds in violation of Penal Code section 626.10, subdivision (a). The principal issue presented in the appeal is whether this statute applies if the pellet gun is inoperable. We conclude that it does, and thus that appellant violated the statute by possessing a pellet gun which was designed to shoot and gave the reasonable appearance of a shooting capability, even if it could not have been fired. Because the other contentions raised on appeal and in the related petition for habeas corpus lack merit, we affirm the judgment and deny the petition.

### I.

Appellant was charged in a second supplemental petition with possession of "a .357 crossman pellet gun" on the grounds of the El Portal school in San Pablo. San Pablo Police Sergeant Burke testified at the jurisdictional hearing that he patsearched appellant in a classroom at the school on the afternoon of June 1, 1994, after being dispatched to the site in response to a report that a youth matching appellant's description had pointed a gun at another youth. Burke found an unloaded pellet gun in the waistband of appellant's pants. Burke said that the gun was designed to shoot BB's, pellets and darts, and that it was not a toy. He said that he had not checked to see whether the gun was operable. The gun was admitted into evidence, and the referee asked to examine it. Burke explained to the referee that "[i]n order to load it, you take off the grip and put in a $CO_2$ cartridge."

Appellant said that he found the gun near some bushes when he got on or off a bus, tried the gun and found that it did not work. Appellant knew that the gun was not working "[b]ecause if you do the trigger, it won't shoot nothing because if it would shoot something it would have been loud." He put the gun on his waist intending to take it home and fix it. He said that the gun did not work because "[i]t has no air." Appellant took the handle of the gun and explained to the referee that "when this thing is open and if somebody takes it out once, all the air goes out."

Appellant said that he had pointed the gun at a guy who was waiting for him "by the school." He said that this guy and four others had beaten him up

the day before, and that this guy had pulled out a gun during the incident. The next day when they pushed him and threatened to beat him up, he pulled out the pellet gun and they ran away.

■ Penal Code section 626.10, subdivision (a) prohibits the possession of various weapons on school grounds, including "any instrument that expels a metallic projectile such as a BB or a pellet, through the force of air pressure, $CO_2$ pressure, or spring action, or any spot marker gun."[1] Appellant contends that this statute refers only to operable pellet guns, and thus the finding that he violated the statute must be reversed because no evidence was presented that his gun was operable. The issue is evidently one of first impression.

Many cases have interpreted the laws prohibiting possession and use of firearms to apply even if the gun in question is inoperable. (*People* v. *Nelums* (1982) 31 Cal.3d 355, 360 [182 Cal.Rptr. 515, 644 P.2d 201] [defendant armed with firearm which "was designed to shoot and gave the reasonable appearance of a shooting capability" violated Pen. Code, § 12022, subd. (a)];[2] *People* v. *Steele* (1991) 235 Cal.App.3d 788, 795 [286 Cal.Rptr. 887] [construing § 12022.3]; *People* v. *Marroquin* (1989) 210 Cal.App.3d 77, 79 [258 Cal.Rptr. 290] [construing § 12025, subd. (b)]; *People* v. *Taylor* (1984) 151 Cal.App.3d 432, 437 [199 Cal.Rptr. 6] [§ 12031, subd. (a)]; *People* v. *Jackson* (1979) 92 Cal.App.3d 899, 901-903 [155 Cal.Rptr. 305] [§ 12022.5]; *People* v. *Thompson* (1977) 72 Cal.App.3d 1, 5 [139 Cal.Rptr. 800] [§ 12021, subd. (a)]; *People* v. *Favalora* (1974) 42 Cal.App.3d 988, 991, 995 [117 Cal.Rptr. 291] [§ 12020]; *People* v. *Hayden* (1973) 30 Cal.App.3d 446, 452 [106 Cal.Rptr. 348] [§ 12022.5], disapproved on another point in *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833].)

■ These cases identify what has been called "an important common thread of perceived fear in their discussion of the underlying purpose of The

---

[1]Penal Code section 626.10, subdivision (a) reads in full as follows: "Any person, except a duly appointed peace officer as defined in Chapter 4.5 (commencing with section 830) of Title 3 of Part 2, a full-time paid peace officer of another state or the federal government who is carrying out official duties while in this state, a person summoned by any officer to assist in making arrests or preserving the peace while the person is actually engaged in assisting any officer, or a member of the military forces of this state or the United States who is engaged in the performance of his or her duties, who brings or possesses any dirk, dagger, ice pick, knife having a blade longer than 2 1/2 inches, folding knife with a blade that locks into place, a razor with an unguarded blade, a taser, or a stun gun, as defined in subdivision (a) of Section 244.5, any instrument that expels a metallic projectile such as a BB or a pellet, through the force of air pressure, $CO_2$ pressure, or spring action, or any spot marker gun, upon the grounds of, or within, any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison."

[2]Unless otherwise indicated, all further statutory references are to the Penal Code.

Dangerous Weapons' Control Law [§ 12000 et seq.]." (*People* v. *Marroquin, supra*, 210 Cal.App.3d at p. 81.) As one case observed, ". . . the statute seeks to deter both physical harm and conduct which produces fear of harm. The fear may arise either from a gun that really shoots or from one which is designed to shoot and gives the appearance of shooting capability. Persons held at gunpoint have no stomach for inquiry. Danger radiates not only from the weapon, but from the defensive reactions of others. In response to the lawbreaker's weapon, operable or not, a victim or law officer may himself resort to a firearm. Further, a demand for affirmative proof of operability would allow the defendant to frustrate the statute by getting rid of the gun or concealing it. . . . [I]t is enough that the prosecution produce evidence of a gun designed to shoot and which gives the appearance of shooting capability." (*People* v. *Hayden, supra*, 30 Cal.App.3d at p. 452.)

The foregoing considerations also apply to pellet guns, which are reasonably perceived as dangerous weapons capable of inflicting serious injury. (See *People* v. *Schaefer* (1993) 18 Cal.App.4th 950, 951 [22 Cal.Rptr.2d 536]; *People* v. *Montalvo* (1981) 117 Cal.App.3d 790, 797 [173 Cal.Rptr. 51]; *People* v. *Sherman* (1967) 251 Cal.App.2d 849, 857 [60 Cal.Rptr. 198].) Like inoperable firearms, inoperable pellet guns create risks of violence because of the reactions their presence can produce. According to appellant's testimony in this case, for example, his assailants had "no stomach for inquiry" (*People* v. *Hayden, supra*, 30 Cal.App.3d at p. 452), and fled at the mere sight of his pellet gun. The Legislature has recognized that the "[p]roliferation of weapons and other injurious objects brought onto school grounds by pupils serves to exacerbate instances of violence." (Stats. 1979, ch. 210, § 1, p. 454.) It has enacted section 626.10 to prevent violence at schools by reducing the incidence of weapons on campus. (*In re Rosalio S.* (1995) 35 Cal.App.4th 775, 779 [41 Cal.Rptr.2d 534].) Statutes are to be interpreted so as to effectuate their apparent purpose. (*People* v. *Marroquin, supra*, 210 Cal.App.3d at p. 79; 2A Sutherland, Statutory Construction (5th ed. 1992) § 45.05, p. 22 and authorities cited.) To turn a blind eye on the potential for violence associated with inoperable pellet guns by excepting them from the statute would frustrate the purpose of the law.

We therefore conclude that appellant violated section 626.10 by possessing a pellet gun which was designed to shoot and gave the reasonable appearance of a shooting capability. Appellant testified that the pellet gun was inoperable, but there is no dispute that it was a real pellet gun and looked like a real pellet gun. The jurisdictional finding was thus supported by substantial evidence.

Appellant argues that by defining a pellet gun in functional terms as "any instrument that expels a metallic projectile such as a BB or a pellet," the

Legislature intended only to prohibit the possession of guns which are capable of expelling projectiles and causing harm with expelled projectiles. Appellant submits that he must be given the benefit of this interpretation because it is at least a reasonable construction of the words the Legislature has used. (See *In re Rosalio S.*, *supra*, 35 Cal.App.4th at p. 781.) He also suggests that if the Legislature had wanted to outlaw possession of all pellet guns, whether or not they were operable, it would simply have stated that "pellet guns" were prohibited without referring to their function. However, appellant's interpretation of the statute is unreasonable.

The statutory scheme as a whole indicates that pellet guns are defined in terms of their operation in order to be precise and comprehensive about the range of devices that are prohibited, rather than to prohibit only guns that are operable. The language at issue in section 626.10 is also the language currently used in section 12001, subdivision (g) to describe the devices which cannot be sold to minors under section 12551, or transferred to minors except under the conditions specified in section 12552.[3] The language of sections 12551 and 12552 has evolved over the years from a simple reference to "air gun, or gas-operated gun" (Stats. 1963, ch. 1340, § 3, p. 2863), to "air gun, or gas-operated gun, designed to fire a . . . pellet or metal projectile" (Stats. 1967, ch. 1360, §§ 1, 2) to the present reference to a "BB device," which is defined in section 12001, subdivision (g) as "any instrument which expels a metallic projectile, such as a BB or a pellet, through the force of air pressure, $CO_2$ pressure, or spring action, or any spot marker gun."

Substitution of the words "instrument that expels" for the words "designed to fire" in the current definition cannot reasonably be interpreted to mean that every sale or transfer of an inoperable pellet gun to a minor is now lawful. There is no reason why a person should be able to avoid prosecution for selling a pellet gun to a minor simply because, for example, the pellet gun lacked a $CO_2$ canister and thus could not be fired at the time of the sale. It would be sufficient that the gun was designed, in the current vernacular, to expel pellets, even though it was not immediately operable without the canister. This is the only reasonable interpretation of the language in section 12001, subdivision (g), and there is no reason to believe that the Legislature intended any different meaning when it used precisely the same language in section 626.10.

---

[3]Section 12551 provides: "Every person who sells to a minor any BB device is guilty of a misdemeanor." Section 12552 provides: "(a) Every person who furnishes any BB device to any minor, without the express or implied permission of the parent or legal guardian of the minor, is guilty of a misdemeanor. [¶] (b) As used in this section, 'furnishes' means any of the following: [¶] (1) A loan. [¶] (2) A transfer that does not involve a sale."

Appellant contends that the repeal of section 12001.1, which for a brief period had defined pellet guns as "firearms" for most purposes under the Dangerous Weapons' Control Law (see *People* v. *Vasquez* (1992) 7 Cal.App.4th 763, 767 [9 Cal.Rptr.2d 255]), makes all of the cases construing the firearms statutes irrelevant. However, the Legislature's decision to distinguish between pellet guns and firearms for some purposes does not alter the reality that similar risks of violence are associated with the possession of both weapons. When the Legislature repealed section 12001.1, it added section 12001, subdivision (g) to confirm that selling a pellet gun to a minor remained a crime. (Stats. 1991, ch. 950, § 2; Stats. 1991, ch. 955, § 1.1.) It cannot be inferred from these actions that possession of pellet guns by minors was thought to present only minimal risks, or risks of an entirely different nature than those created by the possession of firearms. Section 12001.1 appears to have been deleted solely because of a concern that federal law had preempted state regulation of the sales of pellet guns to anyone other than minors. (See *Coalition of New Jersey Sportsmen* v. *Florio* (D.N.J. 1990) 744 F.Supp. 602, 605-609.)

Appellant notes that when the Legislature amended section 626.10 to add pellet guns to the list of weapons prohibited on school grounds (Stats. 1993, ch. 598, § 4; Stats. 1993, ch. 599, § 2), it retained an exception for pellet guns in section 417.2, which regulates the manufacture, transportation and transfer of "imitation firearms" (§ 417.2, subd. (d)(5); Stats. 1993, ch. 598). Appellant reasons that because section 417.2 was amended along with section 626.10, and because the Legislature was not concerned with pellet guns as imitation firearms under section 417.2, section 626.10 must also be aimed only at what appellant calls "real or operable" pellet guns.

This argument has no merit. Again, it appears that pellet guns are excepted from restrictions on the sale of imitation firearms only because of a concern that regulation of pellet gun sales to adults might be preempted by federal law. (*Coalition of New Jersey Sportsmen* v. *Florio, supra,* 744 F.Supp. at pp. 605-609.) The 1993 amendments to section 417.2 deleted that section's prohibition against the brandishing of imitation firearms and moved it to a new section 417.4, but the two sections were phrased so as to retain the prohibition against the brandishing of pellet guns which look like firearms. (Compare § 417.2, subd. (d) ["as used in this section" on manufacture, transfer and transportation, the term "imitation firearm" does not include pellet guns and other devices] with § 417.4 [no such limitation on the term "imitation firearm" for purposes of the crime of drawing or

exhibiting such imitations].) Continued prohibition of the brandishing of pellet guns which look like firearms confirms the Legislature's awareness that pellet guns may do harm even if they are inoperable and merely exhibited. They can prove particularly disruptive in an era when apprehension on school grounds runs high. The presence of any instrument even resembling a firearm is hardly conducive to a thriving learning environment. We conclude that section 626.10 prohibits possession of pellet guns which are inoperable upon school property.

## II.-V.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## VI.

The judgment is affirmed and the petition for habeas corpus is denied.

Anderson, P. J., and Poché, J., concurred.

A petition for a rehearing was denied March 27, 1996.

---

*See footnote, *ante*, page 1694.