[No. D021701. Fourth Dist., Div. One. June 1, 1995.]

In re ROSALIO S., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROSALIO S., Defendant and Appellant.

## COUNSEL

Lynne G. McGinnis, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and Pat Zaharopoulos, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**HALLER, J.**—In this case, we are asked to interpret the word "blade" as used in Penal Code[1] section 626.10, subdivision (a), which outlaws the possession of various knives and other weapons on school campuses. Specifically, for purposes of this case, the statute outlaws possession on a school campus of a "knife having a blade longer than 2 1/2 inches." (§ 626.10, subd. (a).)

### Factual and Procedural Background

On April 18, 1994, Rosalio was a student at Poway High School. A friend of his threatened another student with a knife, which was part of a leatherman's tool. Rosalio's friend gave him the leatherman's tool. The assistant principal of the school called Rosalio to the office after he learned that Rosalio had the leatherman's tool. Rosalio took the leatherman's tool from his backpack and handed it to the assistant principal. Rosalio was arrested for violation of section 626.10, subdivision (a).

On May 25, 1994, the district attorney's office filed a petition in juvenile court alleging Rosalio came within the provisions of Welfare and Institutions Code section 602 by virtue of his unlawful possession of a butterfly knife on a public school campus in violation of section 626.10, subdivision (a). The petition was subsequently amended to strike the word "butterfly."

At trial on June 24, 1994, the leatherman's tool was received into evidence.[2] When the court measured the knife part of the device, the court found the sharpened portion of the knife was two and one-half inches long. However, the court also measured the entire length of the knife—that is, "the metal piece that is exposed from the base of the knife to the tip of the knife"—and found this length to be two and five-eighths inches long. This latter measurement thus included an unsharpened area, which is part of the same piece of metal that makes up the sharpened portion and which is exposed when the knife is in an unfolded position.

After taking the matter under submission, the court rendered its decision on July 1, 1994, finding the "blade" of a knife for purposes of section 626.10, subdivision (a), is the "metal portion that extends from the handle

---

[1]All statutory references are to the Penal Code unless otherwise specified.

[2]The leatherman's tool is a multifaceted gadget that contains, among other things, a knife, a needle-nosed pliers, a file, three screwdriver heads, a leather punch, and a can opener. These various components fold into two handles, which have measures. Pursuant to California Rules of Court, rule 10(d), court exhibit 1, the leatherman's tool, has been transmitted to this court. We have examined the exhibit. (The exhibit is depicted in the appendix.)

when opened." Using this interpretation of "blade," the court made a true finding that Rosalio was in violation of the statute—having had in his possession a knife with a blade longer than two and one-half inches—and sustained the petition.

At the disposition hearing on August 5, 1994, the court granted probation on specified terms and conditions, including drug testing.

Rosalio filed a timely appeal, contesting the juvenile court's order declaring him a delinquent minor (Welf. & Inst. Code, § 602).

## DISCUSSION

■■■ This case boils down to one question: did the juvenile court use the wrong blade measurement in determining Rosalio had possession of a knife with a blade longer than two and one-half inches in violation of section 626.10, subdivision (a)? In other words, at issue is the meaning of "blade" in the context of the statute.

Section 626.10, subdivision (a), provides in pertinent part: "Any person, except a duly appointed peace officer . . . who brings or possesses any dirk, dagger, ice pick, knife having a blade longer than 2 1/2 inches, folding knife with a blade that locks into place, a razor with an unguarded blade, a taser, or a stun gun, . . . any instrument that expels a metallic projectile such as a BB or a pellet, through the force of air pressure, $CO^2$ pressure, or spring action, or any spot marker gun, upon the grounds of, or within, any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison."

As we articulated in *People* v. *Lopez* (1993) 20 Cal.App.4th 897, 901-902 [24 Cal.Rptr.2d 649], the fundamental rules of statutory construction are well settled: "In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. [Citations.] The court begins with the language used. [Citation.] The court attempts to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. [Citations.] 'The words must be construed in context in light of the nature and obvious purpose of the statute where they appear. . . .' [Citation.] The statute 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity. . . .' [Citation.]"

We begin with the words of the statute. The statute states it is illegal to bring or possess on a school campus "any . . . knife having a blade longer

than 2 1/2 inches . . . ." (§ 626.10, subd. (a).) Therefore, the measurement of the blade establishes criminality under this provision. The issue thus turns on the definition of blade. Webster's Third New International Dictionary (1968) page 229 includes the following definition of blade: "the cutting part of an instrument." The American Heritage Dictionary of the English Language (1981) page 138 defines blade as "[t]he flat-edged cutting part of a sharpened tool or weapon." If one were to rely on the dictionary definition of "blade" for the common, ordinary meaning of the word, then it would appear that the blade of Rosalio's knife consisted solely of the sharpened part since that is the only portion that is used to cut objects.

The Attorney General argues, however, that since "knife" is commonly defined as a tool consisting of a blade and a handle (see, e.g., American Heritage Dict. of the English Language, *op. cit. supra*, at p. 724), "blade" as used in section 626.10, subdivision (a), is not restricted to the sharpened portion but rather "anything that is not handle is blade."

Assuming that "blade," as used in the statute, is susceptible to two reasonable interpretations, we properly move beyond the statutory language to use of extrinsic aids to determine legislative intent. (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].) These extrinsic aids can include "the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, . . . and the statutory scheme of which the statute is a part." (*Ibid.*)

As we shall explain, *post*, the most probative of these extrinsic aids in this instance is the statutory scheme.

The "ostensible objects to be achieved" by section 626.10, subdivision (a), obviously are to reduce violence and increase public protection on school campuses. Likewise, it is readily apparent that the "evil[] to be remedied" by the statute is the proliferation of weapons on school campuses. These purposes also can be gleaned from the legislative history.

As originally enacted, section 626.10, subdivision (a), outlawed the possession on public school grounds of "any dirk, dagger, knife having a blade longer than 3 1/2 inches, folding knife with a blade that locks into place, or razor with an unguarded blade . . . ." (Stats. 1974, ch. 103, § 1, p. 218.) The legislation, which was passed as an urgency measure so that it could be implemented at the start of the next school year, referred to "widespread violence and use of knives, razors, and similar devices" on public school grounds in explaining why it was necessary for the statute to go into effect immediately. (Stats. 1974, ch. 103, § 4, p. 219.) From this language, it is

clear the Legislature intended the measure to reduce violence and provide increased protection to people on public school campuses.

The statute was amended eight times, most recently in 1993, when the Legislature, among other things, expanded the list of prohibited knife-like objects to include ice picks, and knives with blades longer than two and one-half inches rather than three and one-half inches. (Stats. 1993, ch. 598, § 4.) According to the Staff Analysis of Senate Bill No. 292 prepared for the Assembly Committee on Public Safety, the list of prohibited knife-like objects was expanded because of reports of a rise in the number of ice picks and knife-like weapons being brought on school campuses that could not be prosecuted under the then-current law. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 292 (1993-1994 Reg. Sess.) July 6, 1993, p. 5.)

The legislative history, however, does not provide much insight into the meaning of the word "blade," as used in the statute. But an examination of other parts of section 626.10 is instructive and supports Rosalio's position that a "blade" consists only of the sharpened portion. "A statute must be construed 'in the context of the entire statutory system of which it is a part, in order to achieve harmony among the parts.' [Citation.]" (*People* v. *Woodhead, supra,* 43 Cal.3d at p. 1009.)

The Attorney General, in advocating its broader definition, argues that all of the metal portion of a knife would penetrate a victim if the knife were used as a stabbing weapon. Therefore, the Attorney General argues the unsharpened metal part, as well as the sharpened metal part, comprises the "blade." Under this argument, the purpose of banning knives with a blade longer than two and one-half inches would be to eliminate or curtail the presence of stabbing weapons on school campuses.

This argument must fail because the Legislature has explicitly outlawed stabbing knife-like weapons elsewhere in the statute. The list of prohibited knife-like instruments or weapons in section 626.10, subdivision (a), includes dirks and daggers. Significantly, the Legislature recently has provided a definition of " 'dirk' or 'dagger.' " (Stats. 1993, ch. 598, § 4.) Section 626.10, subdivision (h), provides: "As used in this section, 'dirk' or 'dagger' means a knife or other instrument with or without a hand guard that is primarily designed, constructed, or altered to be a stabbing instrument designed to inflict great bodily injury or death." Given the extant ban on dirks and daggers, and the rule we should avoid a construction that makes any language surplusage, we conclude the Legislature was referring to "blade" with respect to its cutting function rather than its stabbing function.

This conclusion is in keeping with the ordinary meaning interpretation of the term "blade," that is, "the cutting part of an instrument" (Webster's Third

New Internat. Dict., *op. cit. supra*, p. 229) and supports Rosalio's position that "blade" includes only the sharpened portion of the knife. (Accord, *Bradvica* v. *State* (1988) 104 Nev. 475, 760 P.2d 139, 141].) It also is consistent with two overriding factual considerations: (1) Rosalio was charged with possession of a knife, not a dirk or dagger and (2) there is no evidence the knife he possessed was "primarily designed, constructed or altered to be a stabbing instrument . . . ." (§ 626.10, subd. (h).) Likewise, it is in keeping with the rule of statutory construction that in interpreting a criminal statute, terms should be strictly construed. (*People* v. *Bain* (1971) 5 Cal.3d 839, 850 [97 Cal.Rptr. 684, 489 P.2d 564].)

█ "In resolving the ambiguity, we are guided by well-settled principles of statutory interpretation. '[W]hen language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. [¶] The defendant is entitled to the benefit of every reasonable doubt, whether it arise[s] out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute.' [Citation.]" (*People* v. *Davis* (1981) 29 Cal.3d 814, 828 [176 Cal.Rptr. 521, 633 P.2d 186].)

█ For all of the above reasons, we conclude that in determining whether a knife has "a blade longer than 2 1/2 inches," within the meaning of section 626.10, subdivision (a), only the sharpened portion should be measured.[3] Accordingly, we must reverse the true finding.[4]

### DISPOSITION

Reversed.

Nares, J., concurred.

**FROEHLICH, Acting P. J.,** Dissenting.—The majority has accomplished able research into the question of what the Legislature meant when it included in its definition of instruments prohibited from possession on school grounds a "knife having a blade longer than two and one-half inches." It has, in fact, plumbed the depth of authority on this somewhat narrow issue, having exhaustively researched both dictionary definitions (which have not resolved the matter) and legislative history (which did not help either). Having nowhere else to turn, the majority reaches its conclusion by its own perceptive reading of the statute.

I have no grounds for a conclusion on this issue other than those recited in the majority's opinion. When required to resort simply to a commonsense

---

[3]The Legislature, of course, may amend this statute to define "blade" to include the unsharpened portion.

[4]In light of this disposition, it is unnecessary to address Rosalio's attack on his probation conditions.

approach, as indeed I construe to be the attempt of the majority, I come, however, to a contrary result.

It seems reasonable to me to think that when the Legislature was defining and describing the various weapons it did not want on school grounds its purpose was to preclude instruments which were capable of inflicting a certain degree of injury. Since knives with blades of less than two and one-half inches were excluded from preclusion, the Legislature obviously considered it desirable to permit certain knives to be possessed by school children. Divining legislative intent, happily unhindered by any legislative history or other authority, I would suppose that the socially conscious legislators had in mind the likes of Tom Sawyer or Huckleberry Finn, whiling away the tiresome school hours by whittling on sticks with their small pocket knives.

There is no need for a long knife for whittling, however, and obviously the longer the knife the greater the possibility of its use for some other than benign purpose. Accordingly, we get an arbitrary length—first three and one-half inches and then two and one-half inches. What, I ask, is the purpose of defining a length? Again without benefit of legislative advice, I would assume that the longer the knife the deeper the wound which can be created. The deeper the wound (again sans expert testimony) the more serious the injury. Hence, I would suppose that in deciding what the Legislature meant by its definition one should reflect upon those propensities of the instrument which govern the depth of the potential wound.

In this case we have a knife blade which, if plunged into flesh, would create a wound of greater than two and one-half inches. At the urging of counsel at oral argument we have taken the unusual, and arguably inappropriate, step in terms of strict appellate review of looking at the instrument in question. It is a very smart piece, obviously designed for expert work with leather. Aside from the legislative prohibition, it is the sort of thing that every school boy would like to have. That, however, is beside the point. There is nothing between the sharpened portion of the blade and the unsharpened portion which would prevent or inhibit the blade's entering flesh, if so directed, the entire length of the blade. It seems to me, therefore, that if the Legislature had considered this matter it would have concluded that it intended to prohibit possession of knives which had the potential of inflicting a stab wound of greater than two and one-half inches. This knife has that potential and I think it comes within the legislative prohibition.

As a possibly unnecessary aside, I have trouble with the majority's reliance upon the legislative inclusion in the prohibitions of "dirk" or "dagger," and its suggestion that this somehow aids us in deciding what a

"knife" is. The majority says that it assumes the Legislature intended "dirk" or "dagger" to mean something other than a knife, even though the definition quoted by the majority states that a dirk or dagger is indeed a "knife or other instrument. . . ." If we logically follow the majority's lead and assume, as does the majority, that the Legislature had a clear view of its objective, then any instrument which otherwise could be classified as a "knife" becomes a dirk or dagger, regardless of its length, when it is capable of use as a "stabbing instrument." The knife in question in this case was capable of use as a stabbing instrument, and hence even if it is not a "knife" as defined by the statute it is a "dirk" or "dagger" (and we thankfully need not now try to distinguish between the two) and therefore in any event is a prohibited tool.

I realize that deciding what statutes mean is a question of law and hence our review of the trial court's decision is de novo. We probably are, notwithstanding my reservation noted above, entitled to look at this knife and make up our own minds as to whether it comes within the statutory prohibition. Nevertheless, I am troubled by our obsession with this small issue and the majority's determination to reverse this minor trial court ruling. We have here a momentary lapse in conduct by an otherwise ordinary and law-abiding child, which results in juvenile court proceedings. The kid is convicted by a judge who knows children and deals with them every day, and who is familiar with the problems of knives on school grounds. The decision made by the judge is reasonable and the punishment not excessive (straight probation which, upon successful completion, will result in a dismissal of charges).[1] In a situation like this it would be better, I respectfully counsel, for us to control our natural urge to treat every trial court ruling as monumental and appealable. We should let de minimis rulings lie, even if upon microscopic scrutiny keen judicial minds might find error.

Respondent's petition for review by the Supreme Court was denied August 17, 1995. George, J., was of the opinion that the petition should be granted.

---

[1] I would, however, if the judgment were to be affirmed, strike the probationary condition of drug testing, since there was no evidence in the record of a drug problem.