[No. H021300. Sixth Dist. Apr. 18, 2001.]

In re DO KYUNG K., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DO KYUNG K., Defendant and Appellant.

**COUNSEL**

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Moona Nandi, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MIHARA, J.**—Appellant, a high school student, had a "razor blade" in his wallet while he was on the high school's grounds. The juvenile court found true an allegation that appellant had possessed "a razor with an unguarded blade" on school grounds in violation of Penal Code section 626.10, subdivision (a). The court issued an ordering granting appellant probation without wardship. Appellant challenges this finding on appeal. We first conclude that Welfare and Institutions Code section 800, subdivision (c) does not preclude a minor from appealing from such an order. Then we are faced with an issue of first impression in construing the meaning of the statutory prohibition of possession of "a razor with an unguarded blade" in Penal Code section 626.10, subdivision (a). We conclude that this statutory prohibition does not encompass possession of a *razor blade* alone. Accordingly, we reverse the juvenile court's order.

### *Background*

A petition was filed alleging that appellant had possessed "a razor with an unguarded blade" on school grounds in violation of Penal Code section 626.10, subdivision (a). The only witnesses at the jurisdictional hearing were a sheriff's deputy and the school's "student conduct liaison."

The deputy and the liaison confronted appellant at a public high school, and appellant consented to a search. He removed his wallet from his rear pants pocket and placed it on a table. The liaison picked up the wallet and removed its contents. As she removed money, business cards and papers from the wallet, a "razor blade" fell onto the table out of a black folded clothing tag that had been in the wallet.

Both the deputy and the liaison described the object which fell out of appellant's wallet as a "razor blade." This object was a standard rectangular single-edged, flat, "heavy duty" metal razor blade about one inch long by .75 inches wide. It was "slightly rusted" and had a "dirty old appearance." The sharp edge of the object was "completely bare" and had "no guard" on it. The opposite edge of the object had a thin band enclosing it which served as a guard.[1] Appellant acknowledged to the deputy that "he knew it was illegal" to have the razor blade in his possession on school grounds.

The juvenile court found the allegation true and placed appellant on probation for six months without wardship. Appellant filed a timely notice of appeal.

---

[1] We have reviewed a photograph of this object, which was placed in evidence at the jurisdictional hearing. The object itself was apparently destroyed.

*Analysis*

A. *Appealability of Order*

Appellant appeals from the juvenile court's order placing him on probation without wardship pursuant to Welfare and Institutions Code section 725, subdivision (a). ■ "It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute. . . . The orders, judgments and decrees of a juvenile court which are appealable are restricted to those enumerated in [Welfare and Institutions Code] section 800. . . ." (*People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 709 [135 Cal.Rptr. 392, 557 P.2d 976], citations omitted, disapproved on another point in *People v. Green* (1980) 27 Cal.3d 1, 33-34 [164 Cal.Rptr. 1, 609 P.2d 468].) Welfare and Institutions Code section 800, subdivision (a), authorizes an appeal from "[a] judgment in a proceeding under Section 601 or 602." However, the first sentence of Welfare and Institutions Code section 800, subdivision (c) states: "Nothing contained in this section shall be construed to authorize an appeal from an order granting probation."

■ At our request, the parties submitted supplemental briefing addressing the question of whether Welfare and Institutions Code section 800, subdivision (c) precluded appellant's appeal from the juvenile court's order herein granting probation without wardship. Both appellant and the Attorney General responded to our inquiry by asserting that subdivision (c) did not preclude this appeal. We agree. Although the first sentence of subdivision (c) taken alone might seem to indicate otherwise, when this sentence is taken in context with the remainder of subdivision (c) and with the entire text of the statute and its legislative history, it is clear that this one sentence was not intended to bar an appeal by a minor from an order of probation but only intended to preclude appeals by the People from probation orders.

■ " '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining that intent, we consider the statute read as a whole; harmonizing the various elements by considering each clause and section in the context of the overall statutory framework.' . . . '. . . If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' " (*People v. Steffens* (1998) 62 Cal.App.4th 1273, 1283-1284 [73 Cal.Rptr.2d 314], citation omitted.)

██ The current version of Welfare and Institutions Code section 800 is a statute containing six subdivisions.[2] Until 1991, the statute was an unsubdivided statute of six paragraphs. The entire text of subdivision (c) was added to the statute as part of a 1991 amendment which created subdivisions in the statute, modified the first three paragraphs of the then existing statute and designated those paragraphs as subdivision (a), added subdivisions (b) and (c), and redesignated the three other preexisting paragraphs of the statute as subdivisions (d), (e) and (f).

As amended, Welfare and Institutions Code section 800, subdivision (a) dealt with appeals by minors from juvenile delinquency orders and judgments. Subdivision (b) authorized appeals by the People from certain specified orders and judgments. Subdivision (c), in full, stated: "Nothing contained in this section shall be construed to authorize an appeal from an order

---

[2]The entire text of Welfare and Institutions Code section 800 is as follows: "(a) A judgment in a proceeding under Section 601 or 602 may be appealed from, by the minor, in the same manner as any final judgment, and any subsequent order may be appealed from, by the minor, as from an order after judgment. Pending appeal of the order or judgment, the granting or refusal to order release shall rest in the discretion of the juvenile court. The appeal shall have precedence over all other cases in the court to which the appeal is taken. [¶] A ruling on a motion to suppress pursuant to Section 700.1 shall be reviewed on appeal even if the judgment is predicated upon an admission of the allegations of the petition. [¶] A judgment or subsequent order entered by a referee shall become appealable whenever proceedings pursuant to Section 252, 253, or 254 have become completed or, if proceedings pursuant to Section 252, 253, or 254 are not initiated, when the time for initiating the proceedings has expired. [¶] (b) An appeal may be taken by the people from any of the following: [¶] (1) A ruling on a motion to suppress pursuant to Section 700.1 even if the judgment is a dismissal of the petition or any count or counts of the petition. However, no appeal by the people shall lie as to any count which, if the people are successful, will be the basis for further proceedings subjecting any person to double jeopardy. [¶] (2) An order made after judgment entered pursuant to Section 777 or 785. [¶] (3) An order modifying the jurisdictional finding by reducing the degree of the offense or modifying the offense to a lesser offense. [¶] (4) An order or judgment dismissing or otherwise terminating the action before the minor has been placed in jeopardy, or where the minor has waived jeopardy. If, pursuant to this paragraph, the people prosecute an appeal of the decision or any review of that decision, it shall be binding upon the people and they shall be prohibited from refiling the case which was appealed. [¶] (5) The imposition of an unlawful order at a dispositional hearing, whether or not the court suspends the execution of the disposition. [¶] (c) Nothing contained in this section shall be construed to authorize an appeal from an order granting probation. Instead, the people may seek appellate review of any grant of probation, whether or not the court imposes disposition, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation. [¶] (d) An appellant unable to afford counsel, shall be provided a free copy of the transcript in any appeal. [¶] (e) The record shall be prepared and transmitted immediately after filing of the notice of appeal, without advance payment of fees. If the appellant is able to afford counsel, the county may seek reimbursement for the cost of the transcripts under subdivision (c) of Section 68511.3 of the Government Code as though the appellant had been granted permission to proceed in forma pauperis. [¶] (f) All appeals shall be initiated by the filing of notice of appeal in conformity with the requirements of Section 1240.1 of the Penal Code."

granting probation. Instead, the people may seek appellate review of any grant of probation, whether or not the court imposes disposition, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation."

When the three sentences of Welfare and Institutions Code section 800, subdivision (c) are read as a whole, it is clear that subdivision (c) pertains solely to the scope of the appellate review which *the People* may obtain of an order granting probation with or without wardship. The first sentence precludes an appeal from a probation order while the second sentence permits writ review and the third sentence specifies the scope of that writ review. Only the second sentence expressly limits itself to appellate review by the People, but the only possible reasonable interpretation of the three sentences together is that the three sentences are referring to a single subject: the People's rights to appellate review of orders granting probation. Thus, while taken alone the first sentence of subdivision (c) might appear to preclude any appeal from an order granting probation, the remainder of subdivision (c) makes clear that the preclusion is only intended to apply to appellate review sought by the People.

This construction of the statute is fully consistent with the legislative history of the 1991 amendment. Nothing in the legislative history indicates that any of the added language was intended to restrict a minor's right of appeal. Instead, the sole intent of the amendment was "to allow district attorneys and the Attorney General to appeal from judgments and post-judgment orders in juvenile court cases." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 1137 (1991-1992 Reg. Sess.) May 7, 1991, p. 2.)

In addition, the source of the language in Welfare and Institutions Code section 800, subdivision (c) compels an inference that its addition to Welfare and Institutions Code section 800 was not intended to restrict a minor's right of appeal. ■ "To understand the intended meaning of a statutory phrase, we may consider use of the same or similar language in other statutes, because similar words or phrases in statutes in pari materia [that is, dealing with the same subject matter] ordinarily will be given the same interpretation." (*In re Bittaker* (1997) 55 Cal.App.4th 1004, 1009 [64 Cal.Rptr.2d 679]; *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 988 [95 Cal.Rptr.2d 837].)

Penal Code section 1238, subdivision (d) states: "Nothing contained in this section shall be construed to authorize an appeal from an order granting probation. Instead, the people may seek appellate review of any grant of

probation, whether or not the court imposes sentence, by means of a petition for a writ of mandate or prohibition which is filed within 60 days after probation is granted. The review of any grant of probation shall include review of any order underlying the grant of probation." The sole difference between the language of subdivision (c) of Welfare and Institutions Code section 800 and the language of subdivision (d) of Penal Code section 1238 is the substitution of the word "disposition" in the statute dealing with juvenile appeals for the word "sentence" in the statute dealing with adult criminal appeals.

■ Here, the Legislature used the same language in both statutes, and the two statutes both deal with when appeals are permitted. Consequently, this language should be given the same interpretation in both statutes. Unlike Welfare and Institutions Code section 800, which governs appeals by both the minor and the People, Penal Code section 1238 governs only appeals by the People in adult criminal cases. Appeals by defendants in adult criminal cases are dealt with in other statutes. (Pen. Code, §§ 1237, 1237.5.) Penal Code section 1238, subdivision (d) unambiguously deals only with the People's right to appellate review of orders granting probation and does not restrict a criminal defendant's rights in any respect. Because these two statutes use identical language in dealing with the same subject matter, we can only conclude that the Legislature used this identical language with a single intent and therefore did not intend for Welfare and Institutions Code section 800, subdivision (c) to restrict a minor's right to appeal from an otherwise appealable order granting probation.

Appellant's appeal is not barred by Welfare and Institutions Code section 800, subdivision (c).

## B. *The Merits*

■ We are called upon in this case to construe the meaning of the phrase "a razor with an unguarded blade" in Penal Code section 626.10, subdivision (a). Appellant contends that a razor blade cannot be found to be "a razor with an unguarded blade" because a razor blade is not itself a "razor." The phrase "a razor with an unguarded blade" is not statutorily defined, and we have located no case authority addressing the meaning of this phrase.[3]

■ " '[W]e first examine the words of the [statute]: "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to

---

[3]This same phrase, "razor with an unguarded blade," appears in five other statutes but has also never been construed in connection with those statutes. (Bus. & Prof. Code, §§ 7500.1, subd. (k) [included in the definition of "deadly weapon" in connection with regulation of "repossessors"], 7522, subd. (a) [included in the definition of "deadly weapon" in connection `

have meant what it said, and the plain meaning of the language governs.' " ' " (*People v. Steffens, supra,* 62 Cal.App.4th at pp. 1283-1284.) "Any person [with certain exceptions not relevant here] . . . who brings or possesses any dirk, dagger, ice pick, knife having a blade longer than 2½ inches, folding knife with a blade that locks into place, *a razor with an unguarded blade,* a taser, or a stun gun, as defined in subdivision (a) of Section 244.5, any instrument that expels a metallic projectile such as a BB or a pellet, through the force of air pressure, CO2 pressure, or spring action, or any spot marker gun, upon the grounds of, or within, any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison." (Pen. Code, § 626.10, subd. (a), italics added.)

■ " 'In construing a statute, the task of the court is to determine and give effect to the Legislature's intent. . . . The court begins with the language used. . . . The court attempts to give effect to the usual, ordinary import of the language and to avoid making any language mere surplusage. . . . "The words must be construed in context in light of the nature and obvious purpose of the statute where they appear . . . ." . . . The statute "must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity." ' " (*In re Rosalio S.* (1995) 35 Cal.App.4th 775, 778 [41 Cal.Rptr.2d 534].)

Although no court has construed the meaning of the razor prohibition, the Fourth District Court of Appeal construed the meaning of one of the other phrases in this statute in *In re Rosalio S., supra,* 35 Cal.App.4th 775, and that opinion is instructive in our search for the meaning of the razor prohibition. The issue in *Rosalio S.* was the meaning of the phrase "any . . . knife having a blade longer than 2½ inches" in Penal Code section 626.10, subdivision (a). The question was whether "blade" referred only to the sharpened portion of the knife or instead could be construed as referring to any portion of the knife which was not the handle. The court first resorted to dictionary definitions which defined "blade" as the "cutting part" of a knife. (*Rosalio S.,* at p. 779.) The Attorney General argued that, because a knife was defined as an instrument consisting of a handle and a blade, blade referred to any

with regulation of private investigators], 7582.2, subd. (a) [included in the definition of "deadly weapon" in connection with regulation of private security personnel], 7590.1, subd. (p) [included in the definition of "deadly weapon" in connection with regulation of alarm companies]; Ed. Code, § 48915, subd. (g) [included in the definition of "knife" for purposes of mandatory expulsion for possession of such by a pupil on school grounds].)

portion of the knife other than the handle regardless of whether it was sharpened. (*Ibid.*) The court assumed that the statute was susceptible to either interpretation and proceeded to consider extrinsic sources of legislative intent. While noting that the intent of the statute was to "reduce violence" on school campuses, the court found this intent unhelpful in construing the meaning of "blade." (*Rosalio S.,* at p. 780.)

Instead, the court found the meaning of the statute was best discerned by harmonization of the various parts of the statute. Since the statute contained separate prohibitions for dirks, daggers and knives, the court concluded that the Legislature had intended to distinguish between "stabbing" instruments and "cutting" instruments. While it had prohibited all "stabbing" instruments (i.e., dirks and daggers), it had only prohibited certain "cutting" instruments (i.e., knives with blades longer than two and one-half inches). Since knives that were cutting instruments were only prohibited where the blade was a certain length, the court construed "blade," consistent with its dictionary definition, to refer only to the "cutting" part of the knife and therefore only to the sharpened portion of the knife. (*In re Rosalio S., supra,* 35 Cal.App.4th at pp. 780-781.) The court also pointed out that, where a statute was susceptible of two reasonable interpretations, it was required to adopt the interpretation more favorable to the offender. (*Rosalio S.,* at p. 781.)

We believe that the Fourth District followed the correct path in its search for the meaning of a phrase in Penal Code section 626.10, and we therefore follow the same path.

■ Both appellant and the Attorney General rely on dictionary definitions of "razor." "The interpretation of a statute may well begin, but should not end, with a dictionary definition of a single word used therein. . . . A word is a symbol of thought but has no arbitrary and fixed meaning like a symbol of algebra or chemistry, and it may take on values from the words and ideas with which it is associated. . . . Words used in a statute may, as applied to the words with which they are combined and to the words with which they were intended to be related, have connotations which they might not have when used in context with, or in relation to, other language or where used to express a different purpose." (*Pearson v. State Social Welfare Bd.* (1960) 54 Cal.2d 184, 194-195 [5 Cal.Rptr. 553, 353 P.2d 33].)

■ We therefore begin, but do not end, our inquiry with the dictionary definitions of the word "razor." The three dictionary definitions most favorable to the Attorney General's position are the most general, defining razor as "a sharp-edged instrument" or "a keen-edged cutting instrument" used especially for shaving or cutting hair. (Random House College Dict. (rev. ed.

1975) p. 1097; Webster's American College Dict. (special ed. 1998) p. 655; Merriam-Webster's Collegiate Dict. (10th ed. 1998) p. 971.)

On the other hand, there are also several more specific dictionary definitions which favor appellant's position. Webster's Third New International Dictionary defines a "razor" as "a keen-edged cutting instrument made with the cutting blade and handle in one (as a straight razor) or with the cutting blade inserted into a holder (as a safety razor or electric razor) and used chiefly for shaving or cutting the hair." This dictionary provides helpful illustrations which show that a straight razor has a handle and a long blade which can be folded back into the handle. (Webster's 3d New Internat. Dict. (10th ed. 1993) p. 1888.) The Oxford English Dictionary defines "razor" as a "sharp edged instrument" where the "blade is attached to the handle by a tang and rivet, so that it can be folded into this when not in use." (2 Oxford English Dict. (compact 1971) p. 185.)

The American Heritage College Dictionary contains a general definition similar to those supporting the Attorney General's position, but it also contains an alternative definition supportive of appellant's position. This dictionary defines a razor as a "sharp-edged cutting instrument" used especially for shaving; its alternative definition of razor is "[a] device for holding a razorblade, with guards to prevent cutting of the skin." In addition, this dictionary defines "razor blade" as "[a] thin sharp-edged piece of steel that can be fitted into a razor." (American Heritage Dict. (3d ed. 1997) pp. 1135-1136.)

As in *Rosalio S.*, the dictionary definitions indicate that the word "razor" is reasonably susceptible to two different interpretations. It is therefore necessary to resort to other indications of the Legislature's intent. We find the most persuasive evidence of the Legislature's intent in considering the word "razor" in context with the other words of this statute. The statute does not simply prohibit possession of a "razor." It prohibits possession of "a razor *with* an unguarded blade." (Pen. Code, § 626.10, subd. (a), italics added.) This phrasing suggests that "an unguarded blade" is a component of, rather than the entirety of, a razor.

The Attorney General's suggested interpretation of the razor prohibition is so broad that it would render other portions of the statute surplusage. *Rosalio S.*, for instance, dealt with the prohibition on knives with blades longer than two and one-half inches. Yet, if the Attorney General were correct and "razor" simply referred to any "sharp-edged" object, then *all* knives would come within the razor prohibition *regardless of the length of their blades*. The applicable rules of statutory interpretation strongly counsel us to reject an

interpretation that would render other portions of the statute surplusage. (*In re Rosalio S.*, *supra*, 35 Cal.App.4th at p. 778.)

Furthermore, any doubts as to the correct interpretation of the statutory prohibition must be resolved in appellant's favor. ■ "When language which is susceptible of two constructions is used in a penal law, the policy of this state is to construe the statute as favorably to the defendant as its language and the circumstance of its application reasonably permit. The defendant is entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of a statute." (*People v. Overstreet* (1986) 42 Cal.3d 891, 896 [231 Cal.Rptr. 213, 726 P.2d 1288].)

■ When we take into consideration the various dictionary definitions, the phrasing of the razor prohibition and the context in which this phrasing is placed in the statute, and also consider our obligations to avoid rendering statutory language surplusage and to resolve any doubts in appellant's favor, we are compelled to conclude that the razor prohibition in Penal Code section 626.10, subdivision (a) does not apply to a *razor blade* alone. Since the evidence presented at the jurisdictional hearing indisputably established that appellant possessed simply a "razor blade" alone rather than a "razor with an unguarded blade," the juvenile court's finding that appellant violated Penal Code section 626.10, subdivision (a) cannot be upheld.

Although we hold that a razor blade does not come with the statutory prohibition of Penal Code section 626.10, subdivision (a), we are gravely concerned about the possession of razor blades on school grounds. A razor blade is obviously a dangerous object which may present a significant safety hazard to those on school grounds. Therefore, we encourage the Legislature to take prompt action to address this concern.

*Conclusion*

The order is reversed.

Cottle, P. J., and Elia, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 25, 2001. Brown, J., did not participate therein. Baxter, J., was of the opinion that the petition should be granted.