172 Cal.App.4th 125 (2009)
In re T.B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
T.B., Defendant and Appellant.
No. G039990.
Court of Appeals of California, Fourth District, Division Three.
February 26, 2009.
CERTIFIED FOR PARTIAL PUBLICATION[*]
*126 Cathy A. Neff, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Lilia E. Garcia and Raquel M. Gonzalez, Deputy Attorneys General, for Plaintiff and Respondent.

*127 OPINION
IKOLA, J. 
Defendant T.B. appeals from the jurisdictional and dispositional findings of the trial court, adjudging him to be a ward of the court in connection with two counts alleged in a Welfare and Institutions Code section 602 petition: possession of a weapon on school grounds (Pen. Code, § 626.10, subd. (a))[1] and possession of tobacco by a minor (§ 308, subd. (b)). Defendant claims the "multi-tool" he possessed on school grounds did not fall within the weapons prohibited by section 626.10, subdivision (a), and that the trial court should have granted his motion to suppress all physical evidence obtained from the search of his backpack at school. Defendant also seeks to withdraw his guilty plea to a count of petty theft (§§ 484-488), as alleged in a Welfare and Institutions Code section 602 petition filed subsequent to but adjudicated simultaneously with the first petition. We affirm. The "multi-tool" in defendant's possession qualifies as a "folding knife with a blade that locks into place" under section 626.10, subdivision (a). Moreover, defendant's constitutional rights were not violated by a campus police officer's search of defendant's backpack. Finally, defendant's argument that his admission to petty theft was involuntary and unknowing is without merit.

FACTS
On the morning of August 30, 2006, a campus police officer at an Orange County high school received a radio call from school authorities indicating a student was unable to stay awake in class. The officer arrived and identified the student as defendant. Defendant was not conscious when the officer arrived in the classroom. The officer woke defendant; the officer observed defendant was "out of it" and "not . . . very coherent." The officer escorted defendant to the nurse's office in a golf cart.
At the nurse's office, the officer asked defendant if he had anything in his possession that he should not have at school. Defendant replied that he had cigarettes. The officer immediately searched defendant's backpack, and found a pack of cigarettes, one loose cigarette, a "multi-tool," and glue. The "multi-tool" included numerous tool features, including pliers, a flat head screwdriver, a Phillips head screwdriver, a file, a can opener, and a sharpened blade. When extended, the approximately one-inch long blade locked into place. The "multi-tool" was in a closed position when the officer found itnone of the tools were deployed. After finding the items in defendant's *128 backpack, the officer read defendant his rights pursuant to Miranda v. Arizona (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602], in the presence of the school psychologist. Defendant indicated he understood his rights. The officer asked defendant why he had the "multi-tool" in his backpack; defendant responded that the "multi-tool" was not his and that he did know why it was in his backpack.
Based on defendant's possession of the "multi-tool" and cigarettes, the district attorney filed a petition seeking to declare defendant minor a ward of the state pursuant to Welfare and Institutions Code section 602, subdivision (a). The two issues contested by defendant were whether possession of the "multi-tool" qualified as a violation of section 626.10, subdivision (a), and whether the court should suppress evidence resulting from the search of defendant's backpack. The officer was the only witness who testified at trial. The court denied defendant's Welfare and Institutions Code section 700.1 motion to suppress the physical evidence obtained from defendant's backpack and found the allegations against defendant to be true beyond a reasonable doubt.
The court examined the "multi-tool," describing it as "a . . . precision instrument, and it is quite small. The blade on the knife is approximately one inch. [¶] But on this device, when the blade is open, certainly it is in a locked position, and one cannot move the blade. . . . [¶] In looking at [the `multi-tool'], it struck the court as somewhat de minimus in nature in that it is such a small item . . . . [¶] But in looking at this instrument, it would seem to me that [it] would still be a folding knife if it was opened up properly and if it was used for that purpose."
Prior to the resolution of the first petition, the district attorney filed a second petition to declare defendant a ward of the court based on allegations defendant committed petty theft on September 3, 2007, by stealing two items from an electronics store. Following the court's findings on the first petition, defendant admitted the allegations in the second petition. The court found defendant intelligently, knowingly, and voluntarily waived his constitutional right to a speedy trial on the allegations of petty theft, found a factual basis for the plea, and found the allegations in the second petition to be true beyond a reasonable doubt.
Based on the court's findings on both petitions, it declared defendant a ward of the court, and ordered defendant to complete 10 days in the court *129 work program, pay a fine of $150, pay restitution to the electronics' store, and comply with various terms of probation.

DISCUSSION

Classification of the Item Possessed by Defendant
The first issue before us is whether the "multi-tool" possessed by defendant falls within the list of items specifically prohibited on school grounds by section 626.10, subdivision (a). In particular, we must review whether the trial court correctly concluded defendant's "multi-tool" was a "folding knife with a blade that locks into place." The statute provides, in relevant part: "Any person . . . who brings or possesses any dirk, dagger, ice pick, knife having a blade longer than 2 1/2 inches, folding knife with a blade that locks into place, a razor with an unguarded blade, a taser, or a stun gun, . . . any instrument that expels a metallic projectile such as a BB or a pellet, . . . or any spot marker gun, upon the grounds of, or within, any public or private school providing instruction in kindergarten or any of grades 1 to 12, inclusive, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year, or by imprisonment in the state prison." (§ 626.10, subd. (a), italics added.) The parties are in agreement that the "multi-tool" is not a "knife having a blade longer than 2 1/2 inches" (the blade is about one-inch long) and is not a "razor," "dirk," or "dagger."[2]
(1) Defendant claims the court incorrectly interpreted the statute, not that the court inaccurately described the "multi-tool" in making its factual findings. "The determination of the meaning of a statute is a question of law that is subject to de novo review . . . ." (In re Z.R. (2008) 168 Cal.App.4th 1510, 1512 [86 Cal.Rptr.3d 495].) If the statute is unambiguous, the plain meaning of the statute governs our interpretation because "`"`"the Legislature is presumed to have meant what it said . . . ."'"'" (In re Do Kyung K. (2001) 88 Cal.App.4th 583, 590-591 [106 Cal.Rptr.2d 31].) If the meaning of the statute is not plain, "`"[t]he statute `must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity.'"'" (Id. at p. 591.) "[A]ny doubts as to the correct interpretation of the statutory prohibition must be resolved in [defendant's] favor." (Id. at p. 594.)
Few cases have interpreted section 626.10, subdivision (a), and those that have done so limited their analyses to inapplicable portions of the statute. *130 (In re Z.R., supra, 168 Cal.App.4th at pp. 1512-1514 [box cutter with exposed blade is a "razor with an unguarded blade"]; In re Michael R. (2004) 120 Cal.App.4th 1203, 1205-1207 [16 Cal.Rptr.3d 291] [box cutter with blade retracted into handle is not a "razor with an unguarded blade" because the blade is guarded]; In re Do Kyung K., supra, 88 Cal.App.4th at pp. 590-594 [standard rectangular, freestanding "razor blade" is not a "razor with an unguarded blade" because "razor" should be interpreted to necessarily include an object which holds or is otherwise connected to the component of the "razor" known as a "razor blade"]; In re Arturo H. (1996) 42 Cal.App.4th 1694, 1696-1699 [51 Cal.Rptr.2d 5] [pellet gun is prohibited under the statute even if it is not in working condition and therefore cannot actually "`expel[] a metallic projectile'"]; In re Rosalio S. (1995) 35 Cal.App.4th 775, 778-781 [41 Cal.Rptr.2d 534] [in determining whether a knife's blade exceeds two and one-half inches, measurement of "blade" should include only "sharpened portion" capable of cutting and not the entire "metal portion" of the knife].)
Defendant makes two arguments in support of his contention that the "multi-tool" at issue is not a "folding knife with a blade that locks into place": (1) a "multi-tool" is not a "knife" because it contains multiple tools, only one of which is a small (one-inch) blade with an awkward handle; and (2) the Legislature could not have intended to include the "multi-tool" at issue because it would not function effectively as a weapon.[3]
(2) We do not think section 626.10, subdivision (a), is reasonably susceptible to the interpretation put forth by defendant. The parties agree a knife is "commonly defined as a tool consisting of a blade and a handle . . . ." (In re Rosalio S., supra, 35 Cal.App.4th at p. 779.)[4] (3) The "multi-tool" at issue includes a blade, which can be deployed by pulling it out of the interior of the tool and locking it into place. The blade can then be "folded" back into the tool once the locking mechanism is released. The remainder of the "multi-tool" serves as the handle for the knife when the blade is deployed. Functionally, the "multi-tool" is a "folding knife with a blade that locks into place." (4) The statute does not require any particular blade size, blade sharpness, ease of deployment of the folding blade, or capability of the knife to inflict deadly wounds if the weapon at issue is a "folding knife with a blade that locks into place."
*131 The text describing the other categories of weapons prohibited by section 626.10, subdivision (a), supports our interpretation. An ordinary, nonfolding knife must include a blade that is at least two and one-half inches long; the statute does not require a particular blade length for a "folding knife with a blade that locks into place." (§ 626.10, subd. (a).) A "dirk" or "dagger" must be capable of inflicting "great bodily injury or death"; there is no similar requirement for a "folding knife with a blade that locks into place." (§ 626.10, subds. (a), (h).) A razor is not prohibited if its blade is guarded; there is no similar exception for a "folding knife" that has not yet been deployed. (§ 626.10, subd. (a); see In re Z.R., supra, 168 Cal.App.4th at pp. 1512-1514.) Logically, it appears the Legislature wished to protect against the danger of knives with concealed blades capable of being folded and locked into place, regardless of the knife's size or relative capability for inflicting bodily damage.
Moreover, the ability of the "multi-tool" to assist its owner in various legitimate, nonviolent tasks does not alter our conclusion. All knives can be used for legitimate, nonviolent purposes. That the "multi-tool" is capable of an assortment of functions in addition to the already numerous usages of a knife cannot change the essential fact that a knife is incorporated into the "multi-tool."
(5) Finally, the conglomeration of distinct and separable physical features (the pliers, the screwdrivers, etc.) into one product does not mean the productif it includes a blade and a handleis no longer a "knife."[5] The contemporary "multi-tool" market abounds with a multiplicity of models with varying combinations of features. We think, regardless of the name given to a particular product or the number of features included in a particular product, a "multi-tool" is a "folding knife with a blade that locks into place" if (simply enough) it has a blade that folds out and locks into place.

Admissibility of Physical Evidence Obtained From Backpack Search[*]

Validity of Defendant's Guilty Plea to Charge of Petty Larceny[*]

*132 DISPOSITION
The judgment is affirmed.
Moore, Acting P. J., and Aronson, J., concurred.
NOTES
[*] This opinion is certified for publication with the exception of the sections in the Discussion part titled: "Admissibility of Physical Evidence Obtained from Backpack Search" and "Validity of Defendant's Guilty Plea to Charge of Petty Larceny."
[1] All statutory references are to the Penal Code, unless specified otherwise.
[2] Section 626.10, subdivision (h), defines "dirk" or "dagger" to mean "a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death."
[3] Defendant also notes that the blade did not lock into place once while the officer demonstrated how to use the "multi-tool." This anomalous occurrence does not matter for purposes of our analysis. Substantial evidence supports the finding that the blade did lock into place based on the fact that it locked into place every other time the officer demonstrated the knife function of the "multi-tool."
[4] In re Rosalio S., supra, 35 Cal.App.4th at pages 777-781, assumed without deciding that the "leatherman's tool" at issue (a particular type of "multi-tool") was a "knife." The court focused solely on the question of how to measure the blade on the "leatherman's tool."
[5] Query whether defendant would have raised this issue had the "multi-tool" been a "Swiss Army knife."
[*] See footnote, ante, page 125.