Filed 8/16/21  P. v. Banuelos CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SILVANO ZAPIEN BANUELOS,<br><br>    Defendant and Appellant. | B305433<br><br>Los Angeles County<br>Super. Ct. No. BA024281 |

    APPEAL from an order of the Superior Court of Los Angeles County, Drew E. Edwards, Judge. Reversed and remanded with instructions.

    Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

    Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Amanda V. Lopez and Paul S. Thies, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

In 1992, defendant and appellant Silvano Zapien Banuelos pled guilty to second degree murder. In 2019, he filed a petition for recall and resentencing under Penal Code section 1170.95.[1] The trial court summarily denied the petition, concluding Banuelos was not entitled to relief because the record of conviction showed he was not convicted under a felony murder or natural and probable consequences theory, but rather was a direct aider and abettor to the murder.

On appeal, Banuelos argues the trial court erred by denying his petition without issuing an order to show cause and holding an evidentiary hearing. The Attorney General disagrees, asserting Banuelos failed to make a prima facie showing of entitlement to relief because the record of conviction indisputably showed he was prosecuted and pleaded no contest under the theory that he harbored the intent to kill. We agree with Banuelos and reverse the denial of his petition. The record does not demonstrate as a matter of law that Banuelos was convicted on the theory that he was a direct aider and abettor to the murder who harbored the intent to kill. On remand, the trial court is directed to issue an order to show cause and hold an evidentiary hearing on whether Banuelos is entitled to relief under section 1170.95.

---

1      All undesignated statutory references are to the Penal Code.

# PROCEDURAL BACKGROUND[2]

In 1991, the Los Angeles County District Attorney filed an information charging Banuelos and his co-defendant, Rene Fernando Herrera, with murder. (§ 187, subd. (a).) The charge alleged Banuelos and Herrera committed the murder "willfully, unlawfully, and with malice aforethought." The information further alleged that in the commission of the murder, a principal was armed with a firearm (§ 12022, subd. (a)(1)), Herrera personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5), and Herrera inflicted great bodily injury and death by discharging a firearm from a motor vehicle (§ 12022.55).

In 1992, Banuelos pled no contest to second degree murder (§ 187, subd. (a)), including the charge that he "willfully, unlawfully[,] [and] with malice aforethought murder[ed] Armando Mendoza." He admitted the allegation that a principal was armed with a firearm in the commission of the offense. (§ 12022, subd. (a)(1).) The trial court sentenced him to 15 years to life, plus an additional year for the gun enhancement. At the plea hearing, the court acknowledged Banuelos was not the actual killer.

In 2019, Banuelos filed a petition for resentencing under section 1170.95. In 2020, after appointing counsel for Banuelos and considering briefing from the parties, the trial court filed a written order summarily denying the petition. The court concluded as a matter of law Banuelos was not entitled to relief. The court explained the record of conviction showed Banuelos

---

2     We grant the Attorney General's request that we take judicial notice of the record in Banuelos's direct appeal (case no. B134469).

3

"was not convicted under a theory of felony-murder of any degree, or a theory of natural and probable consequences[,]" and "established [ ] [Banuelos] was a direct aider and abettor to the murder . . . ."

Banuelos timely appealed.

## PRELIMINARY HEARING TESTIMONY

On July 8, 1990, around 1:00 a.m., Alfred Vasquez and some of his friends were with Jose Valencia in front of Valencia's house on Eagle Street. Vasquez belonged to the Clarence Street gang. Vasquez was standing on the sidewalk when he saw a brown Oldsmobile drive by. He recognized the car as belonging to a rival gang, the White Fence gang. Banuelos's co-defendant, Rene Herrera, who Vasquez knew as either Polar or Bad Boy, was in the front passenger seat. Vasquez's friends told him to go to the back of the house in case the people in the car were armed. Three days earlier, Vasquez had seen the same car with people inside throwing up gang signs.

Alex Miramontes was looking out the window of her home when she saw a brown car make a U-turn and drive back down Eagle Street. She then heard three or four gunshots. Vasquez, who was now at the back of Valencia's house, also heard the shots. When Vasquez returned to the front of the house, he saw that his friend, Armando Mendoza (a.k.a. "Rusty"), was lying on the ground. Vasquez later identified Herrera in a photographic lineup.

Two days later, Los Angeles Police Officer Rudolph Navarro, who had been investigating the shooting, knocked on what he believed to be Herrera's door. When no one answered, Officer Navarro asked neighbors for help, and they directed him

to a different house on the same street. At that house, an older man answered the door, invited the officer in, and said his grandson Rene Herrera was asleep inside. Herrera entered the room and admitted he belonged to the White Fence gang. Officer Navarro read Herrera his *Miranda*[3] rights and then began questioning him about the shooting. Herrera told Officer Navarro that he, Bear, Lucky, and Chino had been driving in Bear's brown Oldsmobile Cutlass when the shooting happened. They were taking a short cut through Eagle Street when they saw Clarence Street gang members. They then went to the corner, where Bear opened the hood of the car. Herrera then retrieved a gun that had been stashed near the battery. Herrera, who had put a rag on his face, was going to run at the Clarence Street gang members and shoot them, but instead Bear told him to get inside the car. Bear told Herrera to hold the steering wheel. When they pulled up to the other group, Bear asked where they were from, and they replied "Clarence Street." Bear started shooting, then they drove away. After Bear shot, Herrera saw one of the men fall and die.

Herrera directed Officer Navarro to the location of the car that had been used in the shooting. Officer Navarro ran a DMV check on the license plate and discovered it belonged to Lupe Banuelos.[4] Officer Navarro went to Lupe's home and she invited him in. Officer Navarro observed Banuelos lying on a bed about 14 feet from the door. Officer Navarro saw Banuelos had a "W.F."

---

3    *Miranda v. Arizona* (1966) 384 U.S. 436 [86 S.Ct.1602, 16 L.Ed.2d 694.]

4    To avoid confusion, and with no disrespect intended, Lupe Banuelos is hereafter referred to as "Lupe" and Silvano Banuelos is referred to as "Banuelos."

tattoo on his leg, which he believed stood for White Fence gang. Banuelos told Officer Navarro he went by the name Bear and was part of the White Fence gang.

Banuelos also told Officer Navarro that he, Chino, Lucky, and Bad Boy had been driving on their way to a party. When they picked up Bad Boy, he asked Banuelos to stash his gun. Banuelos did not want to stash the gun because it was his mother's car, but Bad Boy insisted, so Banuelos stashed it under the hood. Later, Banuelos was driving them down Eagle Street when they saw Clarence Street gang members standing on the sidewalk. Banuelos drove down Eagle Street and stopped on the corner. Bad Boy got out of the car, took out the gun, and started running up to the hill toward the Clarence Street group. Banuelos told him to stop, and Bad Boy got back in the car. Banuelos said they should leave, but Bad Boy insisted he just wanted to scare the Clarence Street group. As Banuelos drove up to the Clarence Street gang members, Bad Boy put a rag over his face, extended his arm past Banuelos's head out of the driver's side window, and fired about four shots. Bad Boy then yelled for them to leave, and Banuelos told him he "[messed] up." Banuelos drove back to his neighborhood, dropped the others off, then drove home. He did not know what Bad Boy did with the gun after the shooting.

# DISCUSSION

## The Trial Court Is Directed to Issue An Order to Show Cause and Hold An Evidentiary Hearing to Determine Whether Banuelos Is Entitled to Section 1170.95 Relief

### A. Governing Law: SB 1437 and Section 1170.95

The Legislature enacted SB 1437 "to amend the felony-murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, § 189, subd. (e); *People v. Lewis* (July 26, 2021, S260598) __ Cal.5th __ [pp. 4-5] (*Lewis*).)

SB 1437 also added section 1170.95 to the Penal Code. This section permits individuals who were convicted of felony murder or murder under a natural and probable consequences theory, but who could not be convicted of murder following SB 1437's changes to sections 188 and 189, to petition the sentencing court to vacate the conviction and resentence on any remaining counts. (§ 1170.95, subd. (a).) A petition for relief under section 1170.95 must include a declaration by the petitioner that he or she is eligible for relief under section 1170.95 based on all the requirements of subdivision (a), the superior court case number and year of the petitioner's conviction, and a request for appointment of counsel, should the petitioner seek appointment. (§ 1170.95, subd. (b)(1).)

Subdivision (c) of section 1170.95 provides: "The court shall review the petition and determine if the petitioner has made a

7

prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." Subdivision (c) describes "only a single prima facie" stage of review. (*Lewis*, *supra*, (July 26, 2021, S260598) __ Cal.5th __ [p. 8].) Under subdivision (c), "a complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one . . . prima facie determination." (*Lewis*, *supra*, S260598, at p. 18].)

"If the trial court determines that a prima facie showing for relief has been made, the trial court issues an order to show cause, and then must hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' (§ 1170.95, subd. (d)(1).)" (*Lewis*, *supra*, (July 26, 2021, S260598) __ Cal.5th __ [p. 6].) At the hearing, the parties may rely on the record of conviction or present "new or additional evidence" to support their positions, and "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1170.95, subd. (d)(3).)

## B. Analysis

Because the issue presented in this appeal is a pure question of law concerning the procedures section 1170.95 affords, we apply a de novo standard of review. (See *In re T.B.* (2009) 172 Cal.App.4th 125, 129.) We agree with Banuelos that the trial court erred by denying his petition without issuing an order to show cause and holding an evidentiary hearing. The record of conviction did not demonstrate as a matter of law that Banuelos directly aided and abetted the murder while harboring the intent to kill.

We reject the Attorney General's argument that, given the wording of the murder charge and plea admission, Banuelos's plea necessarily rendered him ineligible for relief as a matter of law. As Banuelos points out, the reasoning of *People v. Rivera* (2021) 62 Cal.App.5th 217, review granted June 9, 2021, S268405 (*Rivera*) is dispositive. Rivera pled no contest to second degree murder and later petitioned for section 1170.95 relief. (*Id.* at p. 223.) After receiving briefing from the parties, the trial court denied the petition, concluding Rivera was ineligible for relief as a matter of law because he "'entered a plea to second degree murder with malice' and nothing in the record of conviction supported the conclusion that the murder was 'anything other than an intentional killing in which [he] harbored such malice.'" (*Id.* at pp. 223-224.) On appeal, Rivera argued the trial court erred in concluding his plea rendered him ineligible for relief as a matter of law. (*Id.* at p. 224.) The Court of Appeal agreed, holding "a defendant who entered a plea to murder 'with malice aforethought' is not categorically incapable of making a prima facie showing of eligibility for relief under section 1170.95, subdivision (c) . . . , because such a plea is not necessarily an

9

admission that the crime was committed with actual malice." (*Rivera, supra*, at p. 224.)

In support of its holding, the *Rivera* court first explained that in California, because only a single statutory offense of murder exists, it is therefore standard practice for accusatory pleadings to allege murder was committed "willfully, unlawfully, and with malice aforethought," and neither felony murder nor murder under the natural and probable consequences doctrine need be separately pleaded. (*Rivera, supra*, 62 Cal.App.5th at pp. 232-233.) "In short, despite the fact that the indictment charged Rivera with murder committed with malice aforethought, it allowed the prosecution to proceed on *any* theory of murder." (*Id.* at p. 233, italics in original.)

The court went on to reject the Attorney General's argument that Rivera's admission to committing murder with malice aforethought rendered him ineligible for relief as a matter of law. (*Rivera, supra*, 62 Cal.App.5th at p. 234.) The court noted "before Senate Bill No. 1437[,] malice could be imputed to a defendant under the felony-murder rule or the natural and probable consequences doctrine, meaning that the person did not need to harbor express or implied malice to be convicted of second degree murder." (*Rivera, supra*, at p. 234; see also *id.* at pp. 230-232.) The court explained that given "the allegation that a murder was committed 'willfully, unlawfully, and with malice aforethought' is a generic charge permitting the prosecution to proceed on *any* theory of murder, we cannot conclude that by admitting to the murder as charged[,] Rivera admitted that he acted with actual malice[.]" (*Id.* at p. 234, italics in original.)

We agree with the reasoning of *Rivera* and apply it here. Although the information charged Banuelos with murder

10

committed with malice aforethought, it allowed the prosecution to proceed on any theory of murder, including the imputed-malice theories of felony murder and murder under the natural and probable consequences doctrine. Accordingly, Banuelos's admission to that charge did not demonstrate as a matter of law that he acted with actual malice.[5] For these same reasons, we reject the Attorney General's argument that the error was harmless, as that contention is based on the erroneous premise that Banuelos's plea rendered him ineligible for relief as a matter of law. Having concluded the trial court's denial of Banuelos's petition was prejudicial error under state law, we need not address his constitutional due process contentions.

Lastly, because we reverse the denial of the petition and remand with directions to issue an order to show cause and hold an evidentiary hearing, we need not address Banuelos's argument that the court erroneously engaged in premature factfinding by relying on evidence presented at the preliminary hearing in concluding he was ineligible for relief as a matter of law. We do note, however, that even assuming the preliminary hearing is part of the record of conviction, and assuming the trial court did rely on the preliminary hearing testimony in issuing its ruling, that testimony does not demonstrate as a matter of law

---

5       We reject the contention in the Attorney General's brief that the denial of the petition should be affirmed because the trial court, when taking the plea, concluded the facts showed Banuelos "very knowingly drove a car that was used to commit a drive-by on a very innocent victim." As conceded at oral argument, that contention is mistaken. It was the prosecutor who made this statement, not the trial judge. Nothing in the record suggests the trial court shared the prosecutor's view of the facts.

that Banuelos pled guilty based on an actual malice theory of liability. The preliminary hearing offers conflicting accounts of Banuelos's role in the shooting. According to Officer Navarro's testimony, whereas Herrera said Banuelos was the shooter, Banuelos said he did not know the shooting was going to happen and Herrera was the shooter.

In sum, the case is remanded to the trial court with instructions to hold an evidentiary hearing. On remand, the parties "may rely on the record of conviction or offer new or additional evidence . . . ." (§ 1170.95, subd. (d)(3).) We express no opinion regarding Banuelos's entitlement to relief following the hearing.

## DISPOSITION

The order denying Banuelos's section 1170.95 petition is reversed. On remand, the trial court is directed to issue an order to show cause and hold an evidentiary hearing to determine whether Banuelos is entitled to section 1170.95 relief.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


MANELLA, P.J.


COLLINS, J.